I wanted to leave Friday free is so that everybody would get up at 4 o'clock in the morning so you could all watch the wedding. I have other things to do at 4 in the morning. Okay. Okay we will hear counsel. Oh in case you think that we is going to participate by telephone. Lou can you hear me? I can indeed. Yes yes indeed. Look forward to participating. Good. The only problem is you don't see the lovely faces that are sitting before me us on the appellant side and also but I don't think lovely is the word. Good-looking on the appellee side. Okay. You're happy to hear that right? He didn't want to be. Well I'm sorry to miss the scene but. The scene is attractive. Okay. All right we'll hear the first case for May it please the court. I'm Beth Whirlin on behalf of the Amici Curie American Immigration Council and National Immigration Project. I'd like to reserve two minutes for rebuttal. That's great. Now you can't both have rebuttal. Okay. So you have to decide who does the rebuttal. Okay. There was a mistake yesterday but our rule is if you have joint counsel then one can be rebuttal. Okay. Are you the rebuttal? I will be the rebuttal. Thank you very much. Fine. And you want two minutes. Could I change that to three then because we were going to do two and sure. Thank you very much. Okay Roberta you have that. Thank you. This case involves the validity of the departure bar regulations to motions to reopen and reconsider removal proceedings. You're in a much better position now that well at least three other circuits have gone your way. Yes your honor. Actually it's five circuits right now. It's the second, the fourth, the sixth, the seventh, and the ninth have found that the departure bar regulation is unlawful and there are two separate grounds. You know where it's going to go from here. Unless the BIA changes its position. My guess is it might not. There is actually a petition for rulemaking pending before the agency your honor and there have been several cert petitions filed on this issue as well but the Supreme Court has not taken cert. Not yet. Not yet at least you're right. But there are two separate grounds for reaching the conclusion that the regulation is unlawful. First that the departure bar regulation conflicts with the statute and second that the jurisdiction by interpreting the regulation as jurisdictional. I'd like to address the first argument and my colleague will address the second argument. Sure. Amica asked the court to find that the motion to reopen a motion to reconsider statutes unambiguously provide all persons in removal proceedings the right to file a motion to reopen a motion to reconsider regardless whether they're inside or outside the United States. Congress's intent to permit post-departure motions is clear first from the plain language of the statute but it's also supported by the overall structure of the motion to reopen provisions which contains some limitations but not a departure bar. Also it's in its intent is clear from the simultaneously enacted provisions in the INA. Most importantly the mandatory removal period. A little slower. Oh sorry. Well that's right. Absolutely. It's got to go all the way to judge. I understand. Okay. The also the reconcilable with the departure bar. So looking first at the plain language of the statute. The statute plainly affords all individuals in removal proceedings the right to file a motion to reopen or and a motion to reconsider. And as the Supreme Court said in data the statutory text is plain insofar as it guarantees each alien the right to file one motion to reopen proceedings. The Supreme Court further went on to say that it would be reluctant to limit the availability of this right or this important safeguard given that the plain text reveals no such limitations. But the departure bar actually does that. It limits the right to a whole class of non-citizens simply by virtue of them being outside the United States. But beyond just the plain language we look to the overall structure of the motion to reopen and reconsider provisions. We can see that Congress certainly intended to permit post-departure motions. When it codified the motion to reopen and reconsider statutes in 1997. I'm wondering whether the moment you move from the plain language to the to the setting of the statute you haven't departed from a at least a Chevron analysis. Aren't you summoning your to your aid of the general statutory framework to show that the particular challenge language is not ambiguous? Your Honor, this case this is this court's case law as well as the Supreme Court's case law has suggested that when you're looking at the first step of Chevron you start with the plain language but beyond that you can also employ traditional tools of statutory construction to determine Congress's intent. And in they pointed that out in the in the decision Zhang from 2005. And so I think that we can in fact move on to employing traditional tools of statutory construction such as the rule that you read the statute as a whole and that you look to what exceptions were actually included in the statute in the presumption that other exceptions were not in fact intended when it's clear that some were included. And I think that's what happened here. When you look at what Congress did in 1996 it actually did codify some limitations on motions to reopen that pre-existed in the regulations. But it significantly it did not codify the departure bar which had previously existed. The government's basically asking you to give no meaning to Congress's deliberate omission of one of the of one of the regulations when it actually went forward and codified the other ones. Is there any legislative history that shows that this was Your Honor, we were not able to find anything specific to this provision. I've had some questions. Yes. How do you put together the different timings for the motion to reconsider and the motion to reopen? Your Honor, so under the statute. You argue that either or both. Could you have a both? You do have different time limits. It's 30 days for a motion to reconsider and 90 days for a motion to reopen. But in fact you can file both. It's not an either or proposition. Do people file both? Yes, they do actually. I would say that the motion to reopen is much more common. And that's because it's a longer period. It's a longer period but it's much more likely that new evidence would be coming up. The law. So it's not dependent errors of law or fact. So it's not necessarily dependent on a new development that occurred. Perhaps that's the explanation for the lengthier time. But in my remaining few moments I'd just like to point out that the Ninth Circuit recently focused on the tension with the mandatory removal period which says that the Attorney General has to remove a person within 90 days. And there's a clear conflict there with the departure bar. In order to give the motion to reopen provision meaning, the court there found that it needed to strike the departure bar. Sorry. That was the case Reyes-Torres. And the court there actually found under step one that the statute required, permitted, to park motions post departure and therefore the regulation was invalid. Thank you. Wait a minute. Don't go away. Judge Pollack, do you have any questions before she sits down? Yes, I do. Suppose, suppose the regulation provided that that any alien could could file one motion to reopen or reconsider. But such a motion as filed on behalf of an alien who has departed the country would be considered only if accompanied by or supported by an application by a member of the alien's family resident in the United States. Would that, would that limitation on the right of an alien to file one motion to be compatible with the statute? Your Honor, I don't think it would be. I think that would would sort of run up against the same problems that we're facing here with an absolute departure bar. That would be, I guess, a subset of the departure bar. But we'd still have the problem of it cutting off eligibility when Congress didn't specifically include such a limitation. And the fact that it did specifically include other limitations, I think, is significant there. So the Attorney General couldn't qualify procedurally the form of an application? I think the way that you've presented it, though, it's beyond just procedural. Because I think depending on it would actually cut off a group of claims. Not all claims are going to involve situations where the person would have that qualifying relative. It person's no longer removable. That would have no basis, it would have no relationship with the relatives in the United States. It could be a change in the law, a new Supreme Court decision that affects the removability. Again, it would have no relationship to relatives in the United States. Thank you. You're welcome. Thank you. Thank you. Okay, we'll hear. May it please the Court, my name is Jacqueline Brown Scott and I represent the petitioner Ramon Prestal-Espinal. And I'll reserve two minutes which I concede to my counsel for rebuttal. The petitioner, a native and citizen of the Dominican Republic, applied pro se for withholding of removal and protection under the Convention Against Torture because he had good reason to believe that he was Thank you. I'm sorry, I apologize. The immigration judge denied his relief and I accepted his case pro bono through the BIA pro bono project. We filed an appeal and the BIA denied petitioner's appeal on November 3rd, 2009. I received the decision approximately five days later and because the petitioner was being detained by DHS in York County, Pennsylvania, our primary method of communication was mail. I wrote him a letter and requested that he contact me as soon as possible to discuss the next steps. I received his phone call on November 24th, the Tuesday before Thanksgiving, and he was already in the Dominican Republic. DHS had deported him the day before. So within the next week... Excuse me, would it make a difference if he had been, he had voluntarily departed as distinguished from being removed? I don't think it would make a difference in the statutory right to one motion to be open no matter how you're removed from the country. In his case it would, in this case it would help him because he was forcibly removed. Originally the Ninth Circuit made a distinction between that in Coit, but later other, you know, circuits have said that in terms of voluntarily, being voluntarily removed or involuntarily removed, it doesn't affect that motion to reconsider. The BIA denied the motion citing jurisdictional grounds notwithstanding his statutory right to file one motion to reopen within 30 days of the decision. As Miki stated, in addition to the fact that the regulation is in conflict with the statute, in relying on it, the agency also contracts without any authority, its subject matter jurisdiction, over motions to reopen, which the Supreme Court has held as impermissible. In Union Pacific, the court considered whether their National Railroad Adjustment Board had jurisdiction to arbitrate labor claims, absent proof that the parties attempted to resolve the dispute through a pre-arbitration conference, and the Supreme Court held that it's unlawful for an agency to contract its own jurisdiction by regulation or by decision, finding that Congress gave that board no authority to adopt rules of a jurisdictional dimension. Similarly, just as Congress delegated authority to the Adjustment Board in that case to adopt rules as it deems necessary to control proceedings, it also gave the Attorney General here the power to, quote, establish such regulations, review such administrative decisions, determinations, and immigration proceedings, delegate such authority, and perform other acts as the Attorney General deems necessary for carrying out this section, and that is 8 U.S.C. 1103 G2. And while in Union Pacific there was an explicit grant, here we have more of a scheme. Besides 1103 G2, there's also Section 1229A, which lays out removal proceedings, the conduct of proceeding, the authority of the immigration judge, and it was in with this section that the motion was reviewed and sent to you. If I were Judge Pollack, I wouldn't understand what you were saying. Hello? So you'd have to please speak more closely, yeah, so that he can understand. I apologize. He's got to go through the telephone. May I put in a question? Sure. The Union Pacific argument is an intriguing one, but I wonder whether at bottom it's any different from the proposition that under Chevron analysis the statute is unambiguously gives an entitlement to any alien, wherever located, to file a motion to reopen within the time period. In either case, isn't one invoking the, quote, clear statutory language to say in the one hand, this is the alien's right, and in the other hand, the BIA can't contract its own jurisdiction in this fashion because of the statute. Analytically, do they wind up by being different arguments? I'm not 100% sure I heard the first part of the question in terms of if they're different arguments. I guess maybe. I'm sorry if I haven't clarified it. It seems to me that the reliance on Union Pacific ultimately comes down to how does one construe what Congress has done in conferring jurisdiction upon the agency. And in the Chevron line of argument, one is ultimately reduced to saying the statutory language unambiguously confers an entitlement to file wherever you're located. I'm wondering if those are really different analytic proceedings or whether in both cases one isn't reduced to saying this is what the statutory language means when it says one motion to reopen. I think that, sorry, go ahead. There are two, I think I understand, there are two independent grounds of invalidating the regulation in terms of the first way, looking at the clear language of the statute, using the Chevron analysis. I think in Union Pacific, you could also, using the Union Pacific line of arguments, you could also technically use Chevron and there's evidence to show that the regulation is unreasonable under Chevron step two. I'm not sure if that's exactly what you're asking. I do think that would come with the same answer in terms of there's two ways to invalidate the regulation. Well, you responded as I expected to the extent that I've made it a confusing question to put. I apologize, of course, but I'm glad to have you focus on both lines of argument. Thank you. You can continue. Okay. So as the Sixth Circuit recently pointed out in Prudze, a motion to reopen statute is an empowering, not a divesting provision, and it grants the board authority to entertain a motion to reopen. Which is sort of the way the Supreme Court treated it in Dada. Right. So exactly. Dada emphasizes the right to file a motion, the right to have it heard, and if the government's going to argue that... I think they said it was one of the most important rights. Yes. Safeguard. Exactly. And if the IJ and the BIA are not going to be able to adjudicate a motion to reopen this right, who would adjudicate it? There are no cases anywhere that go the other way. You've identified five circuits, two, four, six, seven, and nine. Right. The Fifth Circuit and the Tenth Circuit have gone the other way, but they are pre-Union Pacific. And there's a dissent in the Fourth Circuit. There's a strong dissent in the Fourth Circuit. That's correct. So the INA authorizes the BIA to reconsider or reopen its decision, and it does not make that step dependent on the non-citizen's presence in the United States. While the BIA impermissibly refuses to adjudicate statutory motions to reopen or motions to reconsider based on the false premise that it lacks the power to hear them, it at the same time declares itself competent to adjudicate motions to reopen filed by non-citizens abroad in cases involving in absentia orders issued without proper notice. And that is, of course, a matter of bull-nays. So a non-citizen's presence... You just mumbled something. Matter of bull-nays. That's the case that they said they had the... I just wanted to be sure. Okay, sorry. So a non-citizen's presence in the United States does not impact the BIA's adjudicatory authority. In addition, the BIA continues to have jurisdiction over cases involving deported non-citizens that are remanded after a successful petition for review. So Congress certainly intended for a case to continue post-departure by removing the automatic stay provision and the departure bar for judicial review. This Court has also found that another limitation or another limit on motions to reopen, the 180-day time limitation in absentia removal orders, can be equitably told, and that's in Borges. This Court found it instructive that there was no reference to jurisdiction in the statute or in the legislative history. In addition, I just want to add that the departure bar is unreasonable because it's subject to unilateral manipulation by DHS, which certainly happened in the petitioner's case. DHS has unilateral control over the litigation because it can deport a person any time after the removal order becomes final as defined in a... I see my time's up. Yeah, I'm sorry. I don't know what you just said. Why don't you finish the sentence or the thought clearly? That the regulation is subject to unilateral manipulation by DHS because they have the power to unilaterally withdraw the other side's motion. Well, why do you assume that they would manipulate? I mean, I don't know that agencies manipulate. I mean, they do things. They may not be things that you might. Perhaps manipulate is a poor word. They have the power to withdraw another side's motion. I mean, they have the power to cut it short. Manipulation has within it... A negative connotation. Yes. If one were to decide, yes, that the Union Pacific dictated that the board continue to entertain such motions, and the board then said, well, we may have talked about this as a jurisdictional limitation before, but that was probably a mistake. It's really a claims processing limitation. We're willing to but only so long as the alien is in the United States. Would the board not be authorized to do this, how shall I put it, sub-jurisdictional limitation? If so, if the board decided to later characterize it as like a mandatory claims processing, they could. However, we'd still go back to the original argument that the regulation is still in conflict with the statute. So I think it would still have to be analyzed under Chevron, I think. I see. Yeah. Thank you. Thank you. Excuse me, do you have any questions? Okay, thank you. We'll hear from the agency. Mr. Yousef. Good morning. Pick up that back. Good morning. May it please the... Good morning. May it please the court and all Yousef for the respondent. This court should grant Chevron deference to the Attorney General's categorical exercise of discretion in promulgating the departure bar regulation. Aren't you in a difficult position now that one, two, three, four, I think it was five, but anyway, four circuits have won. No, you're right. It is five. It is five. The second, the fourth, the sixth, the ninth, and the seventh? Yes. And the seventh. In a difficult position, what does it take to have the agency reconsider its position when all those appellate judges think its position can't be sustained? I would note that the tenth and the first circuit as well as the strong dissents in the, I believe, the fourth circuit as well as the ninth circuit would at least count on our side for that. But it would be our position that in viewing that the extensive, the broad rulemaking authority given... Better say that again. Yeah. Our position that the broad rulemaking authority given to the Attorney General and his exercise of that discretion in promulgating this regulation is clear. What's the reason for the regulation? I mean, why shouldn't somebody who has been removed involuntarily be able to ask to have a review, reconsideration? Firstly, Congress gave the Attorney General the power to address immigration matters. Yeah, but what's the reason? I mean, the Attorney General, somebody, BIA, somebody had a reason. And it can't just be we don't want to be bothered with requests by aliens who are no longer in the United States when we've removed them. The thought is that the statute enacting these limitations on the motions to reopen, the purpose of that was to reduce the number of, I guess, frivolous applications and to... Well, how do you know they're frivolous if they haven't been considered on the merits? I guess at that period of time when this IRERA was being considered, there was a concern by Congress of the successive applications and the would essentially keep filing in order to continue their applications in the system, so in order to prevent their removal. But that's not what you have here, right? I mean, looking at the facts in the First Circuit case and the Fifth Circuit case, you're talking about instances where action was sought years later. Here, it's right within the 30 days. Period of time. Yeah, right, the 30 days. So what's... I think Judge Slover was getting at, what's the logic of this? We know what the law says, but what's the logic of it? And looking at the two of three circuits that have gone the other way, the facts aren't really a positive or analogous to what we have here, so help us. Let me just add to that. It's easy to say we won't hear a successive motion, which is what you were talking about. But that's not what this does. This just says, if you're not in the United States, you can't file. We removed you, and if you're not in the United States, you can't file a motion. To that, the regulation supports or is in line with the idea of the statutory in IRERA in promoting finality in removal proceedings. Sure, and you could say no alien can file a motion to reopen, but the Supreme Court said those motions are important. We adopt them. I mean, we will stand behind them. They're very important, the Supreme Court said. So how do you reconcile the Supreme Court's approval of motions to reopen with the regulation that says you can't file it if you're not in the United States, and we remove you? In those Supreme Court cases, I think, Kusana, it was the courts still also stated that Congress did not affect in any way the Attorney General's discretion in addressing these matters and in promulgating the regulation. For example, that regulation was in place for nearly 40 years while motions to reopen, and they remained silent as to the issue of whether they wanted to repeal the departure bar, which was present since 1952. So based off of that, there's nowhere in the statute, is there any indication that Congress intended to repeal that? The statute is silent in that regard. I remember when I first came a long time ago, the agency always said it doesn't matter if they're removed because they can still be heard. They can file a motion to reopen. There's just been a complete turnaround of that. Why? I mean, of course, if you're an agency and you don't want to be bothered with aliens, then, you know, but that's your job. That's what the agency is supposed to do. Well, part of that is at the time of the discussion of the, I believe, in the comment period after the statute was enacted and discussing whether to maintain the departure bar, the Attorney General clearly stated that the burden associated with adjudicating all these motions would greatly outweigh the effect that would have on the agency in terms of the number of, just in terms of, I guess, efficiency and ability to address all of the motions to reopen. This was a regulation enacted by the, I guess, promulgated by the Attorney General. That's right, but without any congressional support. I mean, there's nothing in the statute that suggests that this regulation is appropriate or is congressional intent. At the same time that the Congress was considering this matter, when they repealed the judicial review bar, it's presumed that they were aware of this regulation that was in place since 1952, and they made no mention of, they took no position on that matter, except at that same time, they maintained the extensive delegation of authority to the Attorney General to address immigration matters. Let's get back to the circuit cases that I heard earlier. Could the agency in its interest be Actually, Lou, I'm in the middle of a question. One second. I beg your pardon. I'm sorry. No, I wasn't speaking into the microphone, which my law clerks have chided me about, so I apologize. My question is, can we go back to the circuits that you have relied on in the beginning of your presentation? It seems to me that they present instances that are factually distinct from this one, so I'm wondering what solace they really give you. Well, the approach of, I believe it was the Tenth Circuit and the First Circuit, they stopped their analysis at the first step of Chevron in indicating that, or sorry, not stopped, but basing on the fact that the statute was silent as to any indication of Congress intending to repeal the departure bar. And we believe that that still holds and that there's no indication that Congress spoke on the issue. And since there was no action, that silence would then lend it to go to the second step of Chevron, where this is a reasonable interpretation of what Congress was intending here in terms of promoting the finality of immigration proceedings. Well, that's what's been before the courts, whether it is a reasonable regulation. Five circuits have said no. I can't remember exactly specifically how it was. Some circuits indicated that they felt that Congress actually spoke on this issue in the statute. However, it's our position as well as the position of the Tenth and the First Circuit, I believe, that there was a silence on this issue. And the regulation itself is simply the categorical exercise of discretion by the attorney general. During this enactment of the statute. Did I cut your question off? No. In Dada, didn't the Supreme Court recognize that Congress through the arrear created a statutory right to file a motion to reopen reconsider? I believe in that case. I mean, that's only the Supreme Court. Well, that's a tough one to respond to. But it's before us. I understand. While that may be the case that there is still no, there might be the right to file a motion to reopen or a motion to reconsider, the ultimate determination of whether that's granted is not, it's still discretionary as determined by the attorney general. But the administrative agency is limiting that right that the Supreme Court suggested that Congress created in the statute. Is my question clear? It's very clear. Just hard to answer. Yes. Well, in that, in Dada, I still, while it may be interpreted that those motions to reopen would be granted as a matter of right, it's still the notion that their motions to reopen are still disfavored and the finality of immigration proceedings is still the policy and the intent of Congress in this action. But when they enacted IRERA, they specifically simply limited the, I guess, the numerical and time and placed limitations numerically in terms of time on motions to reopen. But at the same time, they did not limit the attorney general's discretionary, I guess, rulemaking authority in this field. And with that, it maintained that that was a gap that was left by Congress in which they delegated to the attorney general in order to address how to adjudicate these motions. So if the agency acts properly, according to its view of this law, you'd never have a motion to reconsider because they just make sure that the alien was removed on day one. Because if the alien was removed on day one, there'd be no way to ever effectively exercise the motion to reconsider. Well, I'm even going with the shorter time period. So that, you say, is what Congress intended to give the attorney general the discretion to essentially eviscerate a right entirely. Well, for that instance, I believe the petitioner would be able to file a stay in order to prevent that from occurring, but also. Well, how's that? It's on day one. I found out yesterday that I'm going to be removed. The next day I'm removed. When am I to do this? According to what you've proposed is within the power of the attorney general and therefore the agency. As to that, I'm not entirely sure how that actually plays out in terms of on a practical basis. Well, that's what we're concerned about. Right. I mean, you say it's within Congress's right to give the attorney general this power and authority. And I'm suggesting to you that there is a practical scenario in which the right would never be able to be exercised. And that's our concern and the concern of at least five other circuits. I understand that. And I see it as that the ability to file that the attorney general is. I guess the notion is that the attorney general is promulgating a regulation that is intended to ensure the finality of removed proceedings. The Congress intended that they remove individuals within a 90 day period. And so the attorney general removing someone in that time frame is simply, I guess, in line with what Congress mandated in terms of maintaining that, I guess, the removal. I know you're in a difficult position, but it just doesn't make any sense if the attorney general through the agency can exercise a right that's been provided to the alien on day one. And just eviscerate the right altogether by removing them before the aliens had a chance to do anything. I mean, this particular factual situation is akin to what I'm talking about, just making it more drastic. I mean, by the time the letter got there, it follows in the Dominican Republic. It could have just as easily been before she mailed the letter. He's in the Dominican Republic. And that just can't be the result that Congress intended. The fact is that Congress remained silent as to the act. I mean, those sort of circumstances may have occurred prior to the enactment. Can you speak up a little bit? Can you speak up a little bit? At the time of the enactment of the statutory where they codified kind of the limitations and the time issues regarding Timbuktu. Are you talking about ERIRA? Yes. Okay. And at that time, the departure bar wasn't— That was 96, wasn't it? Yes. All right. Okay. And at that time, Congress was well aware of the departure bar regulation. They were aware that this is the regulation that the Attorney General had promulgated and had been enforcing since 1952. But did they put in a motion to reopen and reconsider in ERIRA? Yes. The statute that's relevant to this case specifically says the alien may file one motion to reconsider a decision of the alien. Okay. So that shows that Congress did consider it and put it in. Considered the—when Congress was addressing this issue, they indicated to the Attorney General to, I guess, set up regulation— sorry, set up what they thought was the appropriate limitations or kind of codifying it to address that. Isn't it reflected in the time period? Congress had in mind it's a narrow right and we're narrowly providing it in 30 and 90 days respectively. So that goes to the agency's desired alacrity. But it's got to be a right that has an opportunity to be exercised. But at the same time, Congress's intent in, I guess, enacting ERIRA was to promote expediting addressing immigration cases and to, I guess, adjudicate them and establish finality and removal proceedings. That explains the limited time period. At the same time that they established those limited time periods, Congress didn't affect the— even though they're aware of this departure regulation, did not in any way limit the Attorney General's discretion in addressing these issues. But the point is Congress couldn't have intended to eviscerate a right it provided. That's really the essence of the point. If you—it's narrow, 30 days, 90 days. It can't be that you can undermine what they've provided just by moving more quickly to get the alien out of the country. The thought is that Congress was aware of this and it's presumed that they're aware of the fact that this regulation was in— this departure bar regulation was in place. Is there anything in the legislative history that suggests that they were aware of it, that they considered it and purposely didn't do anything? I'm not aware of that, but at the same time it is generally presumed that Congress would be aware, especially in light of the fact that if they were considering the judicial review bar of appealing it, they must have been aware of the Attorney General's longstanding regulation and their decision not to address it or to remain silent on it but maintain the Attorney General's discretion would indicate a silence on that matter. Well, one can look at that and take the other result. Isn't it a little hard to assume that Congress must have known and proceeded or declined to proceed in a particular direction that would weaken the statutory undertaking? Congress must have known that and at the same time being aware of the point that Judge Greenaway so effectively made that if there's immediate departure or departure within 24 hours, removal, the presumed statutory right is vitiated. Why would Congress presumably be aware of and approve such an arrangement? I suppose it's that Congress, having maintained the Attorney General's discretion in addressing these matters, and it generally is, I guess, in addressing an issue of relating to motions or any sort of filings outside of the United States, it could be presumed that they were aware of this regulation that had been in place for nearly 40 years prior to the discussions leading up to IRERA. And I believe my time is up. Blessedly. Thank you so much. Thank you. Ms. Merlin. Hi. I'd just like to clarify on the bad decisions, I would say, the adverse decisions to our side that are out there. The other decisions, yeah. It's the other decisions. Our position is there really is only a conflict with one other circuit. The Tenth Circuit has addressed this issue, the statutory arguments in Rosio Puga. You said the first. He did say the first. I did want to address that. The case is Pena-Muriel. And in that case, there was actually a rehearing petition filed and a subsequent decision denying the rehearing petition in which the First Circuit clarified that the issue of the conflict with the statute was not actually presented to the court and that it hadn't decided that argument. Oh, really? In that case, the issue that was raised – Is that a reported decision? Yes. It's cited in our brief. In that case, the only argument that had presented was that the repeal to the judicial review departure bar actually spoke to the issue alone. The petitioner in that case did not even raise the motion to reopen statute, and so the court just wanted to clarify. So it was just the motion to reconsider and not the motion to reopen? It was neither, actually. The petitioner didn't actually raise any of these arguments. It didn't raise anything that had been raised in William. He made a due process argument and pointed to the departure bar provision that had been repealed with respect to judicial review. But in that case, the alien had been removed five years earlier. He may not have had the statutory argument. It really doesn't come within what we're talking about. Exactly. You're right, Your Honor. So I just wanted to say that it is an open issue. Also, they did not consider this jurisdictional argument under Union Pacific. I didn't hear. That the First Circuit did not consider the jurisdictional argument under Union Pacific. Then I would say, with respect to the Tenth Circuit, while it clearly is at odds with the other circuits, at the time review of PUGA was decided, none of the briefing on the Union Pacific argument was presented to the court either. And there is actually a rehearing petition pending in the Tenth Circuit, and the court ordered the government to respond to that. And they did respond just a couple of weeks ago. So there's potential for reconsideration there as well. If the court has no other questions for me, I'd like to rest on our briefs. Thank you. Thank you. Judge Pollack, do you have any questions? No further questions. Thank you. Thank you. We will take this very important matter under advisement. The panel is going to be reconstituted, so we're going to get up and walk out. Judge Pollack, can we agree on a time for conferencing? What time is convenient for you? We're about to hear two more cases. A time, a convenient time here would be, oh, how long are you, you're going on forward for the balance of the morning, is that right? Yeah. Well. Two more cases, and I think Jane has a capital case with another panel. That's at 1 o'clock. That's at 1 o'clock, yeah. I see. Well, I was going to suggest any time before, say, 2 o'clock would be fine for me. Okay. Well, we'll call you before 2. All right. After 2.30, I won't be available. Okay. Thank you. All right. Thank you both. Thank you all. Okay. Thanks, Lou. Bye. Thank you. Well, of course, we can take these out. Of course.  Thank you.